UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| WILLIAM C. GOLDEN, JR., | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-00832-SEB-MJD |
| CAROLYN COLVIN, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff William Golden requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **REVERSED AND REMANDED**.

## I. Procedural History

Golden filed an application for DIB on December 5, 2010 and an application for SSI on December 27, 2010, alleging an onset of disability of November 20, 2008. Golden's applications were denied initially and on reconsideration. Golden requested a hearing which was held on November 17, 2011 before Administrative Law Judge Julia Gibbs ("ALJ"). The ALJ denied Golden's applications on February 1, 2012. The Appeals Council denied Golden's request for review on April 18, 2013, making the ALJ's decision the final decision for purposes of review. Golden filed his Complaint on May 22, 2013.

## II. Factual Background and Medical History

William Golden, Jr. was 37 years old on the alleged onset date of disability. He has past relevant work experience as a construction worker and parts picker.

Golden was first diagnosed with gout in 1998. In January 2011, Golden began regular treatment for gout by rheumatologist Mehee Srivatana, DO. At the initial appointment, Dr. Srivatana noted tophi in the elbows and left fourth finger. Dr. Srivatana also noted problems with Golden's right hand including that Golden's ability to make a fist with his right hand was at fifty percent. Golden also had decreased range of motion in his right ankle.

Also in January 2011, Golden received a consultative examination from Disability Determination Bureau ("state agency") physician Dr. Dodd. Dr. Dodd found that Golden had decreased range of motion of the right wrist and fingers with tenderness to palpation over the wrist, knees and elbows. Dr. Dodd also found that Golden had decreased grip strength.

In a follow up visit with Dr. Srivatana in March 2011, Dr. Srivatana noted that Golden had improved range of motion in his hand and felt that he could write without pain. Dr. Srivatana also reported that Golden had 5/5 strength and a normal gait and did not have any edema in his extremities.

In April 2011, state agency physician Richard Wenzler, M.D. completed a Physical Residual Functional Capacity Assessment which Dr. Wenzler opined that Golden could occasionally lift/carry twenty pounds, ten pounds frequently; could stand/walk and sit about six hours in an eight-hour workday; and was limited in his upper extremities with regard to pushing and/or pulling. Dr. Wenzler also opined that Golden could occasionally climb ramps/stairs, balance, stoop, kneel, or crouch and that Golden could never crawl or climb ladders/ropes/scaffolds. With regard to Golden's manipulative limitations, Dr. Wenzler opined that Golden had unlimited reaching and feeling abilities, but was limited in handling and

fingering. Specifically, Dr. Wenzler opined that Golden could only perform occasional handling/fingering with the right hand and frequent (as opposed to constant) handling/fingering with the left hand. Dr. Wenzler further opined that Golden should avoid concentrated exposure to hazards, particularly slippery, uneven surfaces and unprotected heights. Dr. Wenzler's assessment was affirmed in May 2011 by state agency physician Dr. Corcoran.

In a May 2011 visit, Golden reported to Dr. Srivatana that he had forty percent improvement in hand pain and Dr. Srivatana observed that the tophi were smaller. Dr. Srivatana also noted that Golden's left fist was sixty percent improved, but he was still unable to close his right fist; however, Golden continued to report pain level of 9/10.

Golden went the emergency room in June 2011 for chest pain, near sycope, dehydration and mild renal insufficiency. Golden reported that he was unable to get out of bed for five days due to a recent gout flare and used his sister's crutches to get up to use the bathroom. Golden also admitted that he had not been taking his gout medication for three weeks, but asserted that it was because his medication had been discontinued. Examination revealed that Golden had swollen knees and ankles, trace edema in all four extremities, and limited range of motion in major joints. He was advised to consume fluids for the dehydration and use caution with ambulation.

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Disability is defined as "the inability to engage in any substantial gainful activity by reason of

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

3

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of

the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV.    The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Golden has not engaged in substantial gainful activity since November 20, 2008, the alleged onset date. At step two, the ALJ found that Golden had the severe impairment of chronic gout. At step three, the ALJ determined that Golden did not have an impairment or combination of impairments that meets or medically equals any impairment in the Listing of Impairments.

Next, the ALJ found that Golden had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: no using a ladder, rope or scaffolding; no climbing or crawling; Golden can perform unlimited reaching and feeling, but he is limited in the use of his right hand to occasional use for fine manipulation or grasping.

At step four, the ALJ determined that Golden was unable to perform any past relevant work. At step five, the ALJ determined that, considering Golden's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Golden could perform. Therefore, the ALJ determined that Golden was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Golden was not disabled. *Dixon*, 270 F.3d at 1176. Golden raises three arguments on review: 1) substantial evidence does not support the ALJ's step three determination that Golden's impairments did not meet or medically equal a listing; 2) substantial evidence does not support the ALJ's RFC determination; and 3) substantial evidence does not support the ALJ's credibility determination. The Court will begin with the ALJ's RFC determination.

The Court finds that substantial evidence does not support the ALJ's RFC determination. The ALJ concluded that Golden was capable of performing light work with limitations that Golden could not perform work requiring use of a ladder, rope or scaffolding, or that required climbing or crawling. [R. at 24.] The ALJ also determined that Golden could perform unlimited reaching and feeling, but limited Golden's use of his right hand to occasional use for fine manipulation or grasping. [*Id*.] The ALJ relied primarily on the opinions of the state agency physicians and gave them great weight. [R. at 33.] However, Dr. Wenzler's RFC assessment included more limitations than what was provided by the ALJ including that Golden should be limited to occasional balancing, stooping, kneeling, or crouching; Golden should only perform frequent, as opposed to constant, handling or fingering in the left hand; and Golden should avoid concentrated exposure to hazards, particularly slippery, uneven surfaces and unprotected heights. [R. at 260-67 (assessment affirmed at R. at 268).]

The ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Dixon*, 270 F.3d at 1176. As such, the ALJ must "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). Here, Dr. Wenzler's RFC assessment was the only medical opinion with

regard to Golden's ability to perform work-related functions which included limitations that were not addressed in the ALJ's RFC determination. Although the ALJ accorded great weight to this assessment, the ALJ did not discuss those limitations or explain her reasons for not including such limitations in the RFC. Accordingly, the ALJ failed to build an accurate and logical bridge from the evidence to her determination of Golden's RFC.

The ALJ used this flawed RFC determination in her hypothetical question to the vocational expert ("VE") at step five. Ordinarily, the hypothetical question must include all limitations supported by medical evidence in the record; however, the hypothetical need not include every physical limitation if the VE had the opportunity to learn of such limitations before or during the hearing. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Here, the transcript does not indicate that the VE reviewed the record in advance of the hearing and the ALJ's questions to the VE during the hearing refer to the state agency's restrictions, but, as in the RFC, does not include a complete list of limitations. [R. at 73.] "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young*, 362 F.3d at 1004.

The Commissioner admits that the ALJ did not discuss these limitations, but argues that any error in this regard is harmless as the additional limitations would not materially change the VE's testimony. [Dkt. 26 at 7.] The Commissioner argues that of the three jobs identified by the VE, only one of them could possibly be precluded by the additional limitations. However, the Commissioner is attempting to play the role of the VE. There is a reason why the VE is an *expert*. The role of the VE is to offer expert opinion testimony in response to the ALJ's

7

hypothetical regarding whether a person with the given limitations in the RFC can perform either their past relevant work or any other work in the national economy. 20 C.F.R. § 404.1560(b), (c). Counsel for the Commissioner is not permitted to speculate as to what jobs would remain after factoring in the excluded limitations. As such, the Court finds that the ALJ has not met her step five burden to prove that other jobs existed in significant numbers in the national economy that Golden could perform.

With regard to Golden's remaining arguments, the Court finds that substantial evidence supports the ALJ's step three and credibility determinations.

### VI.    Conclusion

For the reasons set forth above, substantial evidence does not support the ALJ's determination that Golden was not disabled and the Magistrate Judge recommends that the Commissioner's decision be **REVERSED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 04/23/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov